IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **SHARNETTE HANDY HALL,** : | |
| : | |
| **Plaintiff,** : | Civil Action No. _____ |
| : | Jury Trial Demanded |
| v. : | |
| : | |
| **CITY OF WILMINGTON,** a municipal : | |
| government; **MONICA GONZALEZ** : | |
| **GILLESPIE,** individually and in her official : | |
| capacity as the Director of Personnel for the : | |
| City of Wilmington; and **FRANKLIN** : | |
| **AMPADU, M.D.,** individually and in his : | |
| official capacity as the Police Surgeon for : | |
| the City of Wilmington, : | |
| : | |
| **Defendants.** : | |

## COMPLAINT

1. This is a civil action for compensatory and punitive damages and injunctive relief that arose out of the deprivation of plaintiff's procedural due process rights under the Fourteenth Amendment of the United States Constitution in violation of 42 U.S.C. §1983. Plaintiff's employment was terminated by written order of the Police Chief pursuant to authority under the City of Wilmington Code. The defendants did not comply with the procedures for the termination and involuntary retirement as explicitly required by the City of Wilmington Code and thereby violated plaintiff's rights and caused harm to plaintiff.

### JURISDICTION AND VENUE

2. The claims set forth herein arise and are instituted pursuant to 42 U.S.C. §1983. Defendants, acting under color of the laws of City of Wilmington and the State of Delaware, deprived plaintiff of a right, privilege, and immunity secured by the Fourteenth Amendment to the United States Constitution.

1

3. This Court has original jurisdiction pursuant to 28 U.S.C. §1331 and §1343(a)(3) and 42 U.S.C. §1983. Declaratory relief is sought under 28 U.S.C. §§2201 and 2202.

4. The acts alleged herein were committed within the State of Delaware.

## THE PARTIES

5. The plaintiff, Sharnette Handy Hall, is a citizen of the United States and is a resident of New Castle County, State of Delaware. For ten years, plaintiff was employed as a police officer by the defendant City of Wilmington (the "City") and held the rank of Patrol Officer at the time of her termination.

6. The defendant City of Wilmington is a municipal government existing under the laws of the State of Delaware pursuant to 40 Del. Laws, Chapter 179, as amended by 46 Del. Laws, Chapter 236, within the Wilmington City Code Art. I, § 1-100.

7. The defendant Monica Gonzalez Gillespie is the Director of Personnel for the City of Wilmington. Suit is filed against her individually and in her official capacity.

8. The defendant Franklin Ampadu, M.D. is the Police Surgeon for the City of Wilmington. Upon information and belief, he provides medical services as an employee of the City through a contractual agreement with the City of Wilmington. He served as the medical representative of the City in this termination and involuntary retirement issue. Suit is filed against him individually and in his official capacity.

9. At all times relevant hereto, the defendants were acting within the course and scope of their employment and/or were exercising powers conferred on them under color of the laws of the City of Wilmington and State of Delaware.

## FACTS GIVING RISE TO THE ACTION

10. On or about September 30, 1996, defendant City of Wilmington hired plaintiff as a police officer. The Wilmington Police Department continued to employ plaintiff from September 30, 1996 to August 3, 2007.

11. On December 13, 2005, plaintiff sustained a left knee injury while exiting a police vehicle and subsequently endured substantial medical treatment including arthroscopy, partial lateral menisectomy and excision of a hypertrophic plica. Due to the knee injury, plaintiff was temporarily totally disabled from her employment.

12. On or about February 16, 2007, plaintiff received a letter from the Chief of Police, Michael J. Szczerba, informing her that she had been terminated from her employment and would be placed on involuntary retirement pursuant to his authority under the City of Wilmington Code. The letter noted that her termination was effective on March 9, 2007 and directed her to turn in all her departmental clothing and police equipment by such date. At the time, plaintiff was not eligible for a standard retirement pension but she was potentially eligible for a disability pension under the State pension statute.

13. Shortly after receipt of the February 16th letter, plaintiff sought the assistance of counsel to review the circumstances and evaluate the defendants' actions. On March 6, 2007, a letter was submitted to defendant Gillespie. The letter indicated plaintiff had not been evaluated by the requisite medical committee as contemplated in the State pension statute and that she was contesting her impending termination and placement on the involuntary retirement list.

14. In addition to the State pension statute requirement that a medical committee evaluate plaintiff's eligibility for a disability pension, the Police Chief (and thereby the City) was not

3

permitted to terminate the plaintiff and place her on involuntary retirement until compliance with the provisions of City of Wilmington Code § 39-126.  Under this section, a police officer cannot be terminated and placed on involuntary retirement until the officer's physical condition has been examined by a "board of physicians, consisting of the police surgeon of the city, the family physician of such police officer, and a third reputable physician of the city to be selected by the other members of such board."  The board of physicians must submit a report to the Chief of Police, indicating how much the police officer is incapacitated from performing regular active duty in the police department.  The letter informed defendant Gillespie that plaintiff had not been given the appropriate medical examinations by the board of physicians nor an opportunity to contest the findings.

15. Defendant Gillespie responded telephonically to the letter, suggesting that the Chief had "jumped the gun" and indicated that the involuntary retirement would be rescinded. On or about March 15, 2007, Chief of Police Szczerba issued a letter stating that plaintiff's involuntary retirement had been rescinded until "the pension plan procedure is finalized through a third party physician, in accordance with City of Wilmington Code, Division 2, Section 39-150".

16. At the time of these events, plaintiff was pursuing a workers compensation claim arising from her work-related injuries. A private law firm was representing the City in that claim. On or about June 11, 2007, plaintiff received a notice from the law firm, ordering her to attend an examination with Dr. Samuel Matz for workers compensation purposes. Plaintiff was aware that she was required by the Delaware Workers Compensation Act to attend this examination in order to determine whether she was still eligible for the workers compensation benefits that she was currently receiving.  She did attend the examination.

17. Later that month, Dr. Matz submitted a report to the private law firm, indicating that plaintiff was able to work, clearly able to work desk work, do clerical duties and perhaps a bit more for the police department. The report further indicated that whether or not she was able to return to the field as a police officer remained "somewhat of an open question."

18. Plaintiff then learned that a petition to terminate her workers compensation total disability benefits had been filed by the private law firm, based on the report from Dr. Matz. The law firm's letter also indicated their understanding that plaintiff had been "separated" from her employment with the Police Department. This information caused plaintiff to suffer significant anxiety considering the earlier rescinded termination effort by the City. Plaintiff immediately notified the law firm that she was still an employee of the Police Department. The law firm responded ten days later that the City had indeed confirmed that plaintiff was "separated from her employment". As a result, plaintiff endured significant emotional distress due to learning from someone other than her employer that she had been terminated from her employment.

19. Shortly thereafter, plaintiff received a letter from Chief Szczerba, informing her that effective August 3, 2007, she would be placed on involuntary retirement. Knowing that the required board of three physicians had not examined her, she incurred confusion and significant emotional distress because she was again involuntarily placed on the retirement list even though she knew and the City knew that the required provisions of the City Code had not been fulfilled.

20. A request was made to defendant Gillespie for a copy of the board of physicians report. Defendant Gillespie was also advised that plaintiff was contesting her involuntary retirement and requested an opportunity to be heard in opposition. A further request was made to calculate all benefits owed to plaintiff, including vacation, holiday and compensatory pay.

5

21. Defendant Gillespie submitted a letter to plaintiff's counsel, enclosing a copy of the board of physicians report and advising that the plaintiff had to contact the State Pension Office as to her retirement pension. Defendant Gillespie indicated that the board of physicians consisted of Dr. John Moore, Dr. Samuel Matz and defendant Dr. Franklin Ampadu. This is when plaintiff first learned that the evaluation by Dr. Matz was utilized for the involuntary retirement process, even though she had received notice that the evaluation was for workers compensation purposes. Plaintiff also learned for the first time that the City was indicating that her own doctor had allegedly examined her when the plaintiff knew that was not true.

22. Upon information and belief, Defendant Dr. Ampadu authored and/or approved the board of physicians report, knowing that it was filled with significant inaccuracies and/or falsehoods, because neither Dr. Moore nor Dr. Matz had performed the necessary medical examination and medical records review required by the City Code provisions. Dr. Moore had not examined plaintiff for retirement purposes nor reviewed her medical records in regards to her ability to perform as a full duty police officer. Dr. Matz had examined plaintiff under the auspices of the workers compensation statute and had not provided the information required by the City Code for the Chief's decision on retirement. Dr. Matz, in fact had indicated that the plaintiff's ability to return to work as a police officer was "an open question." Yet, in the board of physicians report, Defendant Dr. Ampadu indicated that it was the opinion of the board of physicians that plaintiff was "unable to perform the essential functions of a full duty Police Officer for the Wilmington Police Department."

23. On August 3, 2007, plaintiff was placed on involuntary retirement from the Wilmington Police Department. Plaintiff's salary, employment benefits, and opportunity to return to full duty in the future were abruptly halted. Plaintiff was highly upset as a result.

24. On or about August 15, 2007, a letter was sent to defendant Gillespie advising her that plaintiff's rights were being intentionally violated because plaintiff had been involuntarily terminated and retired contrary to the express provisions of the City of Wilmington Code. The letter also advised defendant Gillespie that plaintiff intended to contest the board of physicians report on the grounds that it was factually inaccurate, potentially false, and was noncompliant with the City Code's requirements. Defendant Gillespie was informed that plaintiff's family doctor, Dr. Moore, had not conducted a medical examination of plaintiff's physical condition, had not conducted a review of her medical records and had not communicated with defendant Dr. Ampadu in any way about plaintiff's medical condition. Furthermore, the letter indicated that Dr. Matz was identified as the third physician on the board and had not been selected by Dr. Moore and that Dr. Matz had evaluated plaintiff solely for workers compensation purposes and not for City Code retirement requirements. Copies of this letter were separately sent to Mayor James Baker, City Solicitor John Sheridan, and City Treasurer Henry Supinski.

25. A response to this letter was made by defendant Gillespie, indicating that the City Physician had concluded in November 2006 that plaintiff was unable to perform the essential duties of her position and that plaintiff's "private physician" had concurred with this conclusion in December 2006. The letter failed to address the issues raised about the veracity of the information about Dr. Matz and Dr. Moore.

26. Defendant Gillespie was already well aware of similar allegations about the veracity of the board of physicians report made in another police officer's involuntary retirement dispute, yet took no action to investigate the same allegations made by plaintiff about the board of physicians report in her matter and/or remedy the obvious error committed by the City in terminating plaintiff's employment based on the report.

27. As previously stated, plaintiff was employed by the City of Wilmington but was a participant in the State pension plan, as are all Wilmington Police Officers hired after 1991. Defendant Gillespie was absolutely aware that the police officers participants in the other two City police pension plans had the right to "a fair opportunity of being heard in opposition thereto" under City Code to contest their termination and involuntary retirement before they could be terminated. Because plaintiff had been terminated and involuntarily retired on August 3, 2007 without any opportunity to contest it, she requested "an opportunity to be heard in opposition." The defendants failed to provide any opportunity to plaintiff to present her opposition.

## CLAIMS ARISING UNDER 42 U.S.C. §1983

28. By virtue of plaintiff's employment by the Wilmington Police Department (and thereby defendant City of Wilmington) from September 30, 1996 through August 3, 2007, the plaintiff had an expectation of continued employment with the Wilmington Police Department.

29. The aforesaid expectation of continued employment amounts to a property interest which exists under the laws of the State of Delaware and is subject to the protections afforded by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

30. The actions of the defendants as set forth in Paragraphs 1 through 27 above amounted to a deprivation of the plaintiff's property right to continued employment in violation of the plaintiff's right to procedural due process under the Fourteenth Amendment to the United States Constitution which is actionable under 42 U.S.C. §1983. Specifically:

    (a) Defendant Dr. Ampadu, individually and/or as an agent of the defendant City of Wilmington, authored and/or approved a board of physicians report that was factually inaccurate and potentially false, and submitted it to the Police Pension Board. More specifically:

(i) Defendant Dr. Ampadu knew or should have known that plaintiff's family physician, Dr. Moore had not physically examined plaintiff for termination or involuntary retirement purposes;

(ii) Defendant Dr. Amapadu knew or should have known that Dr. Moore had not reviewed plaintiff's medical records for termination or involuntary retirement purposes;

(iii) Defendant Dr. Amapadu knew or should have known that Dr. Moore did not provide a statement or opinion regarding whether plaintiff was incapacitated from performing regular active duty in the police department as required by the City Code in termination and involuntary retirement proceedings;

(iv) Defendant Dr. Amapadu knew or should have known that Dr. Moore had not agreed that Dr. Samuel Matz could be the third physician for the board of physicians;

(v) Defendant Dr. Ampadu knew or should have known that the City's workers compensation attorney had retained Dr. Matz for the purpose of examining plaintiff for eligibility for continued workers compensation benefits and not for involuntary retirement purposes;

(vi) Defendant Dr. Ampadu knew or should have known that Dr. Matz did not examine plaintiff for termination or involuntary retirement purposes;

(vii) Defendant Dr. Ampadu knew or should have known that any statement or opinion about plaintiff's ability to perform her job duties made by Dr. Matz only addressed the workers compensation claim and that Dr. Matz did not provide a statement or opinion about plaintiff's capacity to perform regular active duty in the police department in the manner as required by the City Code.

(viii) Despite this knowledge, Defendant Dr. Ampadu authored and/or approved a board of physicians report containing false and/or inaccurate statements. In particular, the report indicated that defendant Dr. Ampadu, Dr. Moore, and Dr. Matz agreed that plaintiff was "unable to perform the essential functions of a full duty Police Officer." This statement was presented even though Dr. Moore had not examined plaintiff or her medical records for termination and involuntary retirement purposes and had not provided a statement or opinion concerning plaintiff's capacity to perform regular active duty in the police department in the manner as required by the City Code, had not approved the use of Dr. Matz as the third physician, and that Dr. Matz had only examined plaintiff for workers compensation purposes;

(ix) Defendant Dr. Ampadu knew or should have known that his actions in authoring and/or approving this false or inaccurate board of physicians report would have a significant impact on plaintiff's employment. These actions individually or in total constitute malicious and/or wanton acts in violation of plaintiff's federally protected rights.

(b) Defendant Gillespie, individually and as an employee of the defendant City of Wilmington, knew that under City of Wilmington Code §39-126, a police officer may not be terminated and involuntarily retired without an examination and opinion by a board of physicians. Despite this knowledge, defendant Gillespie intentionally advanced and then allowed the adverse actions described herein to occur. Plaintiff was notified on two separate occasions that her employment was terminated and she was involuntarily retired, even though the defendant knew that City Code's requisite provisions had not been fulfilled. More specifically:

(i) Defendant Gillespie knew that plaintiff would be terminated and involuntary retired from her employment with the City on March 9, 2007;

10

(ii) Defendant Gillespie was informed that the process for termination and involuntary retirement pursuant to the City Code had not been completed because plaintiff had not been examined by a board of physicians or been provided a fair opportunity to be heard in opposition;

(iii) Defendant Gillespie acknowledged that the March 2007 process for termination and involuntary retirement had not been properly performed and therefore rescinded plaintiff's involuntary retirement;

(iv) After rescinding the March 2007 termination and involuntary retirement, defendant Gillespie failed to insure that the proper procedures as required by City Code were followed;

(v) Defendant Gillespie knew or should have known that plaintiff had not been examined nor her medical records reviewed by Dr. Moore at any time prior to the August 2007 termination and involuntary retirement;

(vi) Defendant Gillespie knew or should have known that plaintiff had been deceptively ordered to attend an examination with Dr. Matz under the auspices of the Delaware Workers Compensation Act and not for termination and involuntary retirement issues.

(vii) Defendant Gillespie knew that terminating plaintiff would cause all salary and employment benefits to cease and a retirement pension would not start until the pension was approved by the State;

(viii) Defendant Gillespie knew or should have known that the deprivation of salary and employment benefits would likely create a severe hardship on plaintiff;

(ix) Defendant Gillespie knew that plaintiff was terminated and involuntarily retired on August 3, 2007, without any ability to contest the termination and with the knowledge that the City Code requirements had not been met;

(x) Despite acknowledging in March 2007 that the termination and involuntary retirement proceedings had not been properly performed and knowing that the City had still not properly performed the City Code requirements, defendant Gillespie did not attempt to rescind plaintiff's August 2007 termination and involuntary retirement. Instead, in direct contradiction to the express provisions of the City Code, defendant Gillespie allowed plaintiff to be terminated from her employment knowing there were serious allegations raised about the board of physicians report; knowing that the City Code requirements had not been met, knowing that plaintiff had been deceptively ordered to attend a workers compensation medical examination, and knowing the consequences to plaintiff of employment termination. These actions individually or in total constitute malicious and/or wanton acts in violation of plaintiff's federally protected rights.

(c) Defendant City of Wilmington, through the information provided to the personnel department and the law department, could have prevented or mitigated the harm caused to plaintiff. More specifically:

(i) Defendant City of Wilmington knew or should have known that the board of physicians report was not credible because it had evidence demonstrating that plaintiff had not been properly examined by the board of physicians nor had the board reviewed her medical records as required in the City Code involuntary retirement procedures;

(ii) Defendant City of Wilmington deceptively utilized the provisions of the Delaware Workers Compensation Act to compel plaintiff to attend a physical examination;

(iii) Defendant City of Wilmington knew or should have known that plaintiff could not be terminated until the Police Chief reviewed a report from the board of physicians that indicated "how far in the opinion of such board, the officer examined is incapacitated from performing regular active duty in the police department";

(iv) Defendant City of Wilmington knew that plaintiff was terminated from employment on August 3, 2007 despite not having any opportunity to contest the decision and/or the board of physicians report;

(v) Defendant City of Wilmington knew or should have known that its actions and the actions of its employees and/or agents would have a severe detrimental impact on plaintiff;

(vi) Defendant City of Wilmington knew that it could minimize or eliminate any harm to plaintiff by simply rescinding the August 3, 2007 termination and involuntary retirement until such time as the City Code requirements had been met;

(vii) Defendant City of Wilmington failed to take any steps to minimize or eliminate any harm to plaintiff caused by its own failure to comply with City Code requirements.

(d) Thus, the defendants, in failing to comply with the procedures set forth in the City Code § 39-126 and others, unlawfully terminated plaintiff's employment, depriving her of the right to continued employment and failing to provide a meaningful opportunity to be heard by any decision maker prior to her termination on August 3, 2007.

31. The acts, as described above, by defendants Gillespie, Dr. Ampadu, and City of Wilmington, its agents and employees, were practiced either intentionally or with reckless indifference to the federally protected rights of the plaintiff.

32. As a direct and proximate result of the unlawful conduct of the defendants, its agents and employees, plaintiff was injured and has suffered a loss of income, including back pay and employment benefits, suffered a loss of a her police career, suffered great personal embarrassment and has been battered emotionally and psychologically.

**WHEREFORE**, the plaintiff requests that the Court grant the following relief:

(a) enter a declaratory judgment that the acts and practices complained of herein were unlawful and violative of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983;

(b) issue a preliminary and permanent injunction to reinstate the plaintiff to her former employment and to enjoin the defendants from terminating plaintiff's employment unless the termination procedures employed by defendants comply with the minimum requirements of procedural due process under the Fourteenth Amendment and are followed accordingly;

(c) order the defendants, jointly and severally, to make whole, the plaintiff, who has been adversely affected by the violation of the constitutional rights described herein, by appropriate monetary damages, including, but not limited to, back pay and employment benefits, and compensation for all other injuries and losses proximately caused by the unlawful acts of the defendants;

(d) order the defendants, jointly and severally, to compensate the plaintiff for the negative infliction of emotional distress caused by defendants;

(e) enter a judgment against defendant Gillespie for punitive damages;

(f) enter a judgment against defendant Dr. Ampadu for punitive damages;

(g) award plaintiff reasonable attorney's fees, costs of this action, and pre- and post-judgment interest for this action.

(h) grant such other and further relief as the court deems necessary and proper.

RONALD STONER, P.A.

_____
**Ronald Stoner, Esq. DE. 2818**
1107 Drummond Plaza
Newark, DE 19711
(302) 369-6400
Attorney for Plaintiff

Dated:

≤JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
HANDY HALL, SHARNETTE

**DEFENDANTS**
CITY OF WILMINGTON, CITY OF WILMINGTON, MONICA GONZALEZ GILLESPIE, DIRECTOR, CITY OF WILMINGTON,

**(b)** County of Residence of First Listed Plaintiff: NEW CASTLE
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: NEW CASTLE
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
RONALD STONER, ESQ.
1107 POLLY DRUMMOND PLAZA
NEWARK, DE 19711 (302) 369-6400

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury - Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury - Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [X] 442 Employment | **Habeas Corpus:** | [ ] 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | [ ] 550 Civil Rights | [ ] 463 Habeas Corpus - Alien Detainee | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. SECTION 1983
Brief description of cause: DEPRIVATION OF PLAINTIFF'S PROPERTY RIGHT TO CONTINUED EMPLOYMENT IN VIOLATION OF THE 14TH AMENDMENT DUE PROCESS CLAUSE

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- CHECK YES only if demanded in complaint:
- **JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction**. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit**. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin**. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action**. Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity**. Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint**. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases**. This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**. Date and sign the civil cover sheet.

```
                                              FILED
                                      CLERK U.S. DISTRICT COURT
                                      DISTRICT OF DELAWARE

                                      2008 APR -3  PM 4:36
```

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. __08 - 186__

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

# *NOTICE OF AVAILABILITY OF A*
# *UNITED STATES MAGISTRATE JUDGE*
# *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ____4____ COPIES OF AO FORM 85.

__4/3/08__                      _[signature]_
(Date forms issued)           (Signature of Party or their Representative)

                                   __Ronald Stoner__
                                   (Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action