## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHARNETTE HANDY HALL, | : |
| Plaintiff, | : |
| v. | : C. A. No. 08-186-GMS/MPT |
| CITY OF WILMINGTON, et al., | : |
| Defendants. | : |

### REPORT AND RECOMMENDATION

### Procedural Background

Plaintiff, Sharnette Handy Hall ("plaintiff" or "Hall") initiated this 42 U.S.C. § 1983

action on April 3, 2008 against the City of Wilmington ("City"), Monica Gonzalez

Gillespie ("Gillespie"), the Director of Personnel for the City, and Franklin Ampadu, M.D.

("Ampadu"), a police physician for the City (collectively "defendants"). In her complaint,

Hall alleges that defendants violated her procedural and substantive due process rights

in connection with her termination as an employee of the Wilmington Police Department

("WPD"). On May 21, 2008, defendants answered the complaint.

As the result of an October 3, 2008 teleconference with the court, the City

advised that it would move for judgment on the pleadings based on plaintiff's failure to

identify an official policy or custom which would form the basis of municipal liability

under § 1983. During that teleconference, the court instructed the parties to confer to

see if the matter could be resolved without judicial intervention. The parties discussed

the matter and the City provided a draft of the brief that it intended to file.

Apparently in response to that draft, plaintiff filed a two page motion to amend

the complaint on November 17, 2008. On December 5, 2008, the City filed a motion for judgment on the pleadings and a combined answering brief in opposition to plaintiff's motion to amend and an opening brief in support of it motion for judgment on the pleadings. On December 22, 2008, Hall filed her reply brief in support of her motion of amend and an answering brief in response to the motion for judgment on the pleadings. At the same time, she filed a motion to strike the City's combined answering brief and opening brief, arguing that it was filed in violation of D.Del.LR 7.1.2(a).[1] Plaintiff contends in the motion to strike that she was prejudiced by the City's failure to comply with the local rules because her initial motion was limited to two pages and the City's response was a brief totaling seventeen pages. As a result, plaintiff's argument to support the proposed amendment was limited to her combined reply and answering brief. The City filed a combined reply brief in support of its motion for judgment on the pleadings and answering brief to plaintiff's motion to strike on January 5, 2009. Plaintiff's reply brief on the motion to strike was filed on January 15, 2009.

The court will address the three motions:  motion to amend: motion for judgment on the pleadings; and, motion to strike, in this Report and Recommendation.

**Facts**

According to the complaint,[2] Hall was hired as a police officer with the City in September 1996 and remained continually employed with the City until August 3, 2007.

---

[1] D.Del. 7.1.2 provides that the responsive papers "shall be in the form adopted by the moving party; i.e., if the moving party files a motion accompanied by a brief, the responsive paper should be a brief."

[2] The facts contained in the complaint and proposed amended complaint leading up to plaintiff's termination are the same. The amended complaint proposes additional allegations against the City on the basis of official policy and/or custom. All facts contained herein are taken from the complaint and proposed amended complaint

She injured her knee while exiting a police vehicle in December 2005, which resulted in her being temporarily totally disabled from her job.

In mid-February 2007, Chief of Police, Michael J. Szczerba ("Chief Szczerba") informed Hall by letter that she was terminated from her employment effective March 9, 2007 and would be place on involuntary retirement due to her inability to physically perform the essential functions of her job. At that time, Hall was potentially eligible for a disability pension under the State pension statute.

On March 6, 2007, Hall's counsel sent a letter to Gillespie asserting that Chief Szczerba failed to comply with the City of Wilmington Code § 39-126 and the State pension statutes since she had not been evaluated by the requisite medical committee, which, according to plaintiff, provides that a police officer may not be placed on retirement until the officer's physical condition has been examined by a "board of physicians, consisting of the police surgeon of the City, the family physician of such police officer, and a third reputable physician of the City to be selected by the other members of such board." That letter disputed the retirement in that Hall had not been given the appropriate medical examinations by the board of physicians or an opportunity to contest the findings.

Gillespie responded verbally, and suggested that Chief Szczerba "jumped the gun." She advised that the involuntary retirement would be rescinded.

Thereafter, Hall was contacted by a law firm representing the City in her ongoing workers' compensation claim, who directed her to be examined by Dr. Samuel Matz. Hall attended the evaluation understanding that it was related to her workers' compensation benefits. She maintains, however, that the examination was actually

3

being used for involuntary retirement purposes. According to the complaint, in his report to the private law firm, Dr. Matz indicated that Hall was clearly able to do desk work, clerical duties and a "bit more for the police department." He concluded that whether she would be able to return to the field was "somewhat of an open question."

Subsequently, Hall was advised by Chief Szczerba that effective August 3, 2007, she would again be placed on involuntary retirement. Through her counsel, she requested from Gillespie a copy of the board of physicians' report. Gillespie provided a copy of that report. That report, signed by Ampadu as the City physician, advised that, after review of Hall's medical records, it was the conclusion of Dr. John Moore, her family physician, Dr. Matz and Ampadu, that she was unable to perform the essential functions of a full duty police officer. As a result of that report, dated July 17, 2007, Hall claims that she first learned that Dr. Matz's report was being used for involuntary retirement purposes. She alleges that Ampadu's report is "filled with significant inaccuracies and/or falsehoods" since neither Drs. Moore or Matz performed the necessary medical examination and records review required under the City Code. Hall further claims that neither ever examined her for retirement purposes.

On August 3, 2007, Hall was placed on involuntary retirement from the WPD. On August 15, 2007, Hall's counsel informed Gillespie that his client's rights were intentionally violated because of the termination and that her retirement was contrary to the expressed provisions of the City Code. Hall specifically contended that the Code allowed her to be heard in opposition to termination and that the board of physicians' report was not only inaccurate, but contained false information. The letter further noted that Dr. Moore had not conducted a medical examination, had not performed a review

4

of her medical records, nor communicated with Ampadu. The letter also maintained that Dr. Matz, as the third physician, had not been selected by Dr. Moore. In response, Gillespie reported that the City physician determined in November 2006 that Hall could not perform the essential duties of her position and that at that time, Dr. Moore had concurred with his conclusion.

Hall asserts that at the time of her involuntary termination, Gillespie was aware of similar allegations regarding the veracity of the board of physicians' report in light of another police officer's dispute. She also argues that Gillespie knew of Hall's right to a fair opportunity to contest before the termination occurred. Despite Hall's request "to be heard in opposition," she has never been provide that opportunity and remains on involuntary retirement.

## Judgment on the Pleadings Rule 12(c)

Generally, judgment on the pleadings under Fed. R. Civ. P. 12(c) is appropriate when there are no material issues of fact. The moving party is required to show that it is entitled to judgment as a matter of law.[3] The court does not consider matters outside the pleadings, and it must accept the non-moving party's allegations as true, drawing all reasonable inferences in the non-movant's favor.[4] The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and the documents incorporated by reference.[5] The analysis of a motion for judgment on the pleadings is

---

[3] *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005); *Inst. for Sci. Info., Inc. v. Gordon & Breach Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991).

[4] *Mele v. Fed. Reserve Bank*, 359 F.3d 251, 257 (3d Cir. 2004); *Inst. for Sci Info., Inc.*, 931 F.2d at 1005; *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 189 (3d Cir. 1998).

[5] Wright and Miller, *5C Fed. Prac. & Proc. Civ. 3d* § 1367 (1990).

5

the same standard as a Rule 12(b)(6) motion to dismiss.[6]

To survive a motion to dismiss under Rule 12(b)(6), the factual allegations must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[7] A plaintiff is obliged "to provide the 'grounds' of his 'entitle[ment] to relief' beyond labels and conclusions."[8] Although heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged.[9] Thus, under a motion for judgment on the pleadings, like under a motion to dismiss, a plaintiff is required to make a "showing" rather than a blanket allegation of entitlement to relief.[10]

## Rule 15

Fed. R. Civ. P. 15(a) allows a party to amend a pleading once as a matter of course before a responsive pleading is served. After a responsive pleading is served, a complaint may only be amended with the consent of the adverse party or by leave of the court. Generally, such leave is to be freely given.[11] The court has discretion to determine the appropriateness of the proposed amendment and to deny the amendment when considering the factors of undue delay, bad faith on the part of the party seeking the amendment, undue prejudice to the opposing party or futility of the

---

[6] *Webb v. Corr. Med. Servs.*, 2008 U.S. Dist. LEXIS 11306, at *2 (D. Del. Feb. 14, 2008) (citing *Turbe v. Government of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991)).

[7] *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955, 1965 (2007); *see also Victaulic Co v. Teiman*, 499 F.3d 227, 234 (3d Cir. 2007).

[8] *Twombly*, 127 S. Ct. at 1965.

[9] *Id.* at 1974.

[10]*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008).

[11] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

6

amendment.[12]

Under the liberal pleading standard of Fed. R. Civ. P. 8, only " a short plain statement of the claim *showing* that the pleader is entitled to relief,"[13] is required, the purpose of which is to place the opposition on notice of the conduct charged.

To determine whether Hall has alleged sufficient facts to support her claim against the City, an analysis of the elements for municipal liability is necessary.

## Law of Municipal Liability

Under *Monell v. Department of Social Services of the City of New York*, "a local government may not be sued pursuant to § 1983 for an injury inflicted solely by its employees or agents."[14] For liability to be imposed, a plaintiff must show that either: 1) "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers," or 2) that the constitution deprivation was "visited pursuant to government 'custom' even though such a custom has not received formal approval through the body's official decision making channels."[15] In applying *Monell*, the Third Circuit has explained that "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom."[16]

---

[12] *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984); *Massarsky v. General Motors Corp.*, 706 F.2d 111 (3d Cir. 1983).
[13] Fed. R. Civ. P. 8(a) (emphasis added).
[14] 436 U.S. 658, 694 (1978).
[15] *Id.* at 690-91.
[16] *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).

7

A municipal policy may be shown in the following manner. Municipal liability may

occur "where an employee or agent of the municipality acts pursuant to an official policy

or edict of the municipality."[17] Further, a single action "where the decisionmaker

possesses final authority to establish municipal policy with respect to the action

ordered," can be a "policy" for attaching municipal liability.[18] In defining the scope of

municipal liability, the court focuses on the role and functions of the policymakers of the

municipality. In delineating that scope, the Supreme Court has explained:

> the authority to make municipal policy is necessarily the authority to make
> final policy . . . When an official's discretionary decisions are constrained
> by policies not of that official's making, those policies, *rather than* the
> subordinate's departures from them, are the act of the municipality.
> Similarly, when a subordinate's decision is subject to review by the
> municipality's authorized policymakers, they have retained the authority to
> measure the official's conduct for conformance with their policies. If the
> authorized policymakers approve a subordinate's decision and the basis
> for it, their ratification would be chargeable to the municipality because
> their decision is final.[19]

Moreover, even where the policymaking official has discretion to exercise certain

functions, that alone does not impose municipal liability based on the exercise of such

discretion.[20] In addition, the policymaker's decision making authority must be final

regarding the action purported as municipal policy.[21] Therefore, identifying the official

policymakers is key to the inquiry regarding municipal liability:

> the trial judge must identify those official or governmental bodies who
> speak with final policymaking authority of the local government actor

---

[17] *Izquierdo v. Sills*, 68 F. Supp. 2d 392, 405 (D. Del. 1999) (citing *Monel v. Dept. of Soc. Serv. of the City of New York*, 436 U.S. 658, 690 (1978)).

[18] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

[19] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (O'Connor, J. plurality opinion) (internal citation omitted) (emphasis added).

[20] *Pembaur,* 475 U.S. at 481-482 (Brennan, J. concurring).

[21] *Praprotnik*, 485 U.S. at 123.

> concerning the action alleged to have caused the particular constitutional
> or statutory violation at issue.[22]

Only when the policymakers have been identified can a court determine whether they
established the challenged policy, acquiesced to a custom or acted to cause the
constitutional violation.

Section 1983 liability may also flow from constitutional violations pursuant to
government custom. Custom may be proven in two ways: "by showing that a given
course of conduct, although not specifically endorsed or authorized by law, is so well-
settled and permanent as virtually to constitute law,"[23] or "by evidence of knowledge
and acquiescence" by the final policymakers.[24] Although a plaintiff is not required to
show that the practice is so "permanent and well settled" to constitute a "force of law,"[25]
custom cannot be proven by merely citing one instance of the custom asserted.[26]

Further, for municipal liability to exist under § 1983,

> [t]he plaintiff must also demonstrate that through its deliberate conduct the
> municipality is the 'moving force' behind the injury alleged. That is, the
> plaintiff must show that the municipal action was taken with the requisite
> degree of culpability and must demonstrate a direct causal link between
> the municipal action and the deprivation of federal rights.[27]

Thus, the second part in the analysis of municipal liability is whether the official
policymakers caused the deprivation of rights. Where no allegation contends that the
municipality through its official policymakers directly violated § 1983, but a custom or
policy caused the violation, "rigorous standards of culpability and causation must be

---

[22] *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 736 (1989).

[23] *Beilevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

[24] *Beck*, 89 F.3d at 971 (citing *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989)).

[25] *Monell*, 436 U.S. at 691.

[26] *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995).

[27] *Board of County Commissioners of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997).

9

applied to ensure that the municipality is not held liable solely for the actions of its

employees."[28]

A municipality's failure to train its employees constitutes a "policy" actionable

under § 1983 only where that failure demonstrates deliberate indifference to the rights

of the person affected.[29]  Moreover, where failure to train is claimed, a plaintiff must

allege facts which demonstrate a plausible nexus or affirmative link between the

municipality's failure to train and the specific deprivation of constitutional rights

involved.[30]

Therefore, liability of the City cannot be based solely on *respondeat superior*.

## Parties' Contentions

The contentions addressing the City liability are as follows.  In paragraph 1 of the

proposed amended complaint, after alleging the legal basis for her action, Hall notes

that her employment was terminated by written order of the Police Chief pursuant to

his authority under the City Code.  She continues that

[t]he defendants did not comply with the procedures for termination and
involuntary retirement of employees as explicitly required by the City of
Wilmington Code, *established an official policy or custom that deprived
plaintiff of her substantive and procedural rights, authorized or acquiesced
to deception, fraud, fiction, misrepresentation and deceit, failed to
investigate allegations of misconduct in the termination process* and
thereby violated plaintiff's rights and caused harm to plaintiff.[31]

---

[28] *Id.* at 405.

[29] *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997); *Berg v. County of Allegheny*, 219 F.3d 261, 267 (3d Cir. 2000) (finding that a showing of simple or heightened negligence is insufficient under § 1983); *see also*, *Carter v. City of Philadelphia*, 181 F.3d 339 (3d Cir. 1999) (establishing the three-part test to determine whether a municipality was deliberately indifferent).

[30] *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1028 (3d Cir. 1991) (citing *City of Canton v. Harris*, 489 U.S. 378, 391(1989)).

[31] The additional language in the proposed amendment is italicized.

Paragraph 30 contains the specific allegations raised against defendants.  At

subparagraph (c) are the contentions directed to the City based on alleged municipal

liability:

> (c) *defendant City of Wilmington, by official policy and/or custom,*
> *subjected plaintiff to an employment termination process in which the*
> *Chief of Police and/or the Director of Personnel established a policy or*
> *custom of arbitrary selection of candidates, minimal or non-existent*
> *consideration of medical evidence, minimal or non-existent consideration*
> *of physical job performance standards, minimal or non-existent training of*
> *the evaluators, utilization of deception, fraud, fiction misrepresentation or*
> *deceit and failure to review or investigate allegation of misconduct raised*
> *against the process.*

It unclear from that paragraph whether Hall is generally alleging that the Police

Chief and/or Gillespie are official policymakers under § 1983, or whether by their

conduct a custom arose of which the policymakers were aware and to which they

acquiesced.

Subparagraph (d) are contentions against the City based on its alleged conduct

or knowledge about the inappropriateness of the termination process.

In addition, the proposed amended complaint adds allegations of due process,

wrongful termination, breach of contract and breach of implied covenant or good faith

and fair dealing violations (paragraphs 31 through 34 respectively) against all

defendants.  Except for the due process claim, the other averments are based on state

law.  Regarding the due process claim, Hall alleges that the actions of the defendants

as contained in paragraphs 1 through 30 deprived her of a property right to continued

employment in violation of her procedural due process under the Fourteenth

Amendment, and that such conduct is actionable under 42 U.S.C. § 1983.  She makes

similar contentions regarding the state law claims asserting that the conduct

enumerated in paragraphs 1 through 30, are actionable under § 1983. Paragraphs 10 through 30 outline the facts, as discussed herein, upon which Hall relies to support her various contentions against each defendant.

Further, Hall contends in her brief, but no where in the proposed amended complaint, how "well established practice" exists via the conduct of Chief Szczerba by his termination of five or six other officers during his term as Police Chief.[32] Hall also seems to suggest, again in her brief and not in the proposed amended complaint, that based on Chief Szczerba's correct or mistaken belief, he purports to have final decision-making authority on whether to terminate a police officer for disability.[33] She also cites to Chief Szczerba's deposition to support the proposition that his training to determine whether an officer should be retired for disability was inadequate.

The City maintains that Hall has failed to identify any official City policy which led to her alleged deprivation of due process and notes that what she claims is that certain City employees deviated from those policies, specifically the City Code, which caused her injuries.[34] It emphasizes that the individuals involved in her termination were not decision-makers with final authority. Further, the City argues that Hall has not alleged any official City custom which resulted in alleged deprivation of due process. Regarding her state law claims of beach of contract and breach of implied covenant of good faith and fair dealing, the City propounds that the requisite elements have not

---

[32] Those facts are found no where in the pleadings.

[33] Again, Hall introduces facts outside the pleadings. She does not allege in her proposed amended complaint that a decision-maker with final authority implemented her alleged due process deprivation or who that decision-maker is. She focuses in the proposed amendment on the violations by certain individuals of the City Code, thereby suggesting that that Code governs the involuntary retirement process.

[34] The City points out that Hall is simultaneously arguing that City employees violated the City Code, and contending that their conduct constituted an official policy.

been pled. It asserts that the third state claim, wrongful termination, is merely
duplicative of the other claims and therefore must be dismissed. Further, it argues that
if the wrongful termination claim is a new tort claim, it is barred by the operation of the
County and Municipal Tort Claims Act, 10 *Del. C.* § 4010, *et. seq.* ("Tort Claims Act").

**Analysis**

### Proposed Amendment: Municipal Liability– Procedural Due Process

In support of its position that there is no municipal liability because those
involved in Hall's termination were not final decision-makers, the City relies on *Izquierdo
v. Sills*.[35] Hall contends that such reliance is misplaced because Izquierdo's claims
arose under the police discipline system which is regulated by administrative rules and
regulations, a collective bargaining agreement and a Delaware state statute, none of
which are relevant to the instant matter.

In *Izquierdo*, the plaintiff argued that the Chief of Police was a decision-maker,
vested with final authority in the disciplinary process, whose conduct, as a result,
imposed liability on the City because his actions constituted official City policy. The
issue of municipal liability was presented to the court via a motion for summary
judgment. The court determined that the disciplinary process was governed by 11 *Del.
C.* § 9200, *et. seq.* (the Delaware Law Enforcement Officers' Bill of Rights), the
collective bargaining agreement and the WPD Officer's Manual. After a thorough
analysis of the pertinent governing documents and their history, the court determined
the Chief of Police was not a decision-maker with final authority because (1) he had no

---

[35] 68 F. Supp. 2d 392 (D. Del. 1999).

power to unilaterally change policy established under a state statute; (2) he could not modify or ratify the collective bargaining agreement, since approval by the Mayor and City Council was required; and (3) he alone could not change or approve the Manual. Therefore, his actions did not establish official policy as a matter of law.

In its analysis, the City emphasizes the court's conclusion in *Izquierdo*. That conclusion, however, was based on the facts specific to that case. Although the analysis by the court in *Izquierdo* is very instructive regarding the law on municipal liability and the evidence necessary to prove such liability, the facts involved in the two cases, and the bases for liability at this stage, appear to be different. Further, as noted herein, the decision in *Izquierdo* occurred at the summary judgment stage, after discovery had been completed. In the instant matter, although some discovery has been taken, it apparently has not been completed. Moreover, there is evidence which suggests, that the Chief of Police has terminated other officers, approximately five or six, in similar fashion. Arguably such practice, if known or acquiesced to by those having final decision-making authority, could operate as a custom. Also at issue appears to be whether the Chief of Police actually has final decision-making authority.

Hall's proposed amended complaint suggests that certain individuals, by the manner in which Hall was placed on involuntary retirement, breached the City Code, and thereby violated her due process rights.[36] She appears to argue, in addition, that a custom developed from the practices of the Chief of Police and/or the Director of

---

[36] Hall does not argue that a policy of the City, specifically City of Wilmington Code § 39-126, violates a federal law or constitutional right or that it caused her alleged due process deprivation. Rather, she relies upon that provision to support her contentions against the individual defendants.

Personnel regarding termination/involuntary retirement which was allowed or acquiesced to by the City in violation of her due process rights. Whether Hall can maintain her action within this fine line remains to be seen. Further, in paragraph 30(d) of the proposed amended complaint, and in her briefs, some attempt is made to describe the conduct of which the City allegedly was aware which established a custom. Despite the lack of detail underlying the allegations of municipal liability, at this stage, the court will allow the amended complaint to the extent that it attempts to add allegations of a custom against the City.[37]  The law governing municipal liability under § 1983 has been emphasized herein to demonstrate the conspicuous disparity between Hall's allegations in the proposed amended complaint and what she must establish to survive summary judgment.[38]

### Proposed Amendment:  State Law Claims

Regarding Hall's breach of contract, breach of implied covenant of good faith and fair dealing and wrongful termination claims, if they are based on state law or a specific contract, then they fail to allege a claim covered by § 1983.  "It is, of course, fundamental that the Civil Rights Act permits recovery for only 'deprivations of any rights, privileges, or immunities secured by the [federal] Constitution and [federal] laws.'"[39]  As a result, "[i]t becomes important to delineate that conduct which is actionable in state courts . . . , and that which is actionable in federal courts under

---

[37] In drawing its conclusion, the court is not suggesting that *respondeat superior* alone is adequate to support a claim against the City under § 1983.

[38] Hall's proposed amended complaint suffers from a similar "blunderbuss approach both as to legal theories and named defendants" along with the "vice of . . . lack of clarity" as the amended complaint in *Izquierdo* did.

[39] *Smith v. Spina*, 477 F.2d 1140, 1143 (3d Cir. 1973) (quoting *Howell v. Cataldi*, 464 F.2d 272, 278 (3d Cir. 1972)).

15

§ 1983. The two rights of action do not always stand *in pari materia*."[40] "Recovery under § 1983 is strictly limited to deprivations under the federal constitution and *federal law*."[41]

Regarding the breach of contract claim, the City argues that Hall has not identified the contract that was breached. It posits that if Hall is referencing the Collective Bargaining Agreement ("CBA"), then her claim fails as a matter of law because she did not follow the terms of the grievance procedure of that agreement.[42] In sum, the City maintains that since Hall has failed to allege the elements of a breach of contract claim, that is, the contract and contractual obligation, the breach and the resulting damages, her proposed amendment should be denied. Hall contends that the City Code and the statutory pension provisions create a property interest in continued employment which requires cause for termination. Therefore, because she had a constitutionally protected property interest in her employment, Hall argues that termination could only occur for cause. Because she was terminated without procedural due process, she contends that the City is liable.[43]

It appears that Hall has alleged that a federal right (due process) protected under § 1983 was violated by the breach of her employment contract.

---

[40] *Howell v. Cataldi*, 464 F.2d 272, 278 (3d Cir. 1972) ("The rights protected by § 1983 are public ones, created or adopted by the Federal Constitution or by Congress.").

[41] *Smith*, 477 F.2d at 1144 (holding that a party who sustained injuries while in the custody of the police could not recover under § 1983 on the ground that the officers committed some act which was unlawful under state law, but did not rise to a violation under federal law or of a constitutional right) (emphasis in original).

[42] The City references a document which has not been produced to the court nor is part of the pleadings.

[43] As stated previously, the City's liability for breach of an employment contract based on a violation of a federal right under § 1983 cannot be founded on *respondeat superior*. Hall does not contend that the official policy, as contained in the City Code, violates due process. She appears to argue that the individual defendants violated policy and the City was aware of or acquiesced to such conduct.

Concerning her breach of implied covenant of good faith and fair dealing which Hall alleges is actionable under § 1983, she concurs with the City that such claims are limited to four situations under Delaware law as propounded in *Lord v. Souder*.[44]  Hall, apparently, relies on the fourth ground, where the employer falsified or manipulated employment records to create fictitious grounds for termination.  In her argument, she outlines a litany of sins, specifically, breaches by City employees of its Code.[45]  Further, Hall contends that the procedure utilized for her termination was falsified or manipulated.  She never suggests that the grounds for her termination, inability to perform the essential functions of her position as a police officer, were manipulated or false.  Despite her "horse-cart" argument, under *Bailey v. City of Wilmington*,[46] allegations of procedural improprieties are insufficient under Delaware law to support a claim for breach of implied covenant of good faith and fair dealing.  Since Hall cannot meet the elements of a breach of implied covenant of good faith and fair dealing on which a violation of a federal right is based, this claim should be dismissed.

Although, Hall's wrongful termination claim is not entirely clear, at this stage, she has sufficiently alleged a § 1983 claim, albiet minimally.  To the extent she is alleging conduct only actionable under state law, either tort or breach of contract, or relies upon *respondeat superior* for liability of the City, it is not actionable under § 1983 and may run afoul of the County and Municipal Tort Claims Act, 10 *Del. C.* § 4010, *et. seq.*[47]

---

[44] 748 A.2d 393, 401 (Del. 2000).

[45] To the extent Hall is alleging that the City is liable based on the conduct of its employees – a *respondeat superior* argument,– such averments do not allege a claim under § 1983.

[46] 766 A.2d 477, 480 (Del. 2001).

[47] 10 *Del. C.* § 4011 provides that "all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery for damages."

17

**Motion to Strike**

Hall moves to strike the combined answering brief of the City. In her form-over-substance argument, Hall contends that her ability to argue her position was somehow short-changed because the City combined its opening argument on its motion for judgment on the pleadings with its opposition to her motion to amend in a brief format. By responding to her motion to amend through a combined brief, rather than a numbered response, Hall argues that the City violated D.Del.LR 7.1.2(a).

The issues underlying the City's motion for judgment on the pleadings and Hall's motion to amend are intertwined. Having all arguments on clearly related matters in one document facilitates judicial economy. Of note, Hall merged her arguments supporting her motion to strike with her response to the City's combined brief ostensibly because the City had combined the motions to amend and for judgment on the pleadings. Despite her circular logic, Hall's conduct demonstrates the relationship between the issues in the motion to amend and the motion for judgment on the pleadings.

Besides merely asserting that she was prejudiced, Hall has not demonstrated how she was prejudiced by the City's conduct. If Hall felt that the combined briefing mechanism prevented her from adequately presenting her arguments, she could have requested that the court allow her an additional filing, a request that she never made.

Therefore, Hall's motion to strike should be denied.

## ORDER AND RECOMMENDED DISPOSITION

Consistent with the findings herein,

18

IT IS RECOMMENDED that:

      1. Plaintiff's motion to strike (D.I. 49) be denied.

      2. Plaintiff's motion to amend (D.I 39). be granted in part and denied in part. Plaintiff's motion to add the claim of breach of implied covenant of good faith and fair dealing should be denied.

      3. The City's motion for judgment on the pleadings (D.I. 44) be granted in part and denied in part.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1) and D.Del.LR 72.1, The parties may serve and filed specific written objections within ten (10) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b).

The parties are directed to the Court's Standing Order in Non-Pro se matters for Objection Filed under Fed. R. Civ. P. 72, dated April 7, 2008, a copy of which is available on the court's website, www.ded.uscourts.gov.


April 6, 2009                  /s/ Mary Pat Thynge
                                 UNITED STATES MAGISTRATE JUDGE